HONORABLE RONALD B. LEIGHTON

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| MICHAEL AND COLETTE CARRINGTON, husband and wife, and the marital community thereof, *et al*.,<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF TACOMA, DEPARTMENT OF PUBLIC UTILITIES, LIGHT DIVISION, D/B/A TACOMA POWER ("TACOMA POWER"), a Washington municipality,<br><br>Defendant. | CASE NO. 3:16-cv-05900<br><br>ORDER DENYING PLAINTIFFS' MOTION TO REMAND AND GRANTING DEFENDANT'S MOTION TO DISMISS<br><br>[Dkt. #s 2 & 9] |

THIS MATTER is before the Court on Plaintiffs' Motion to Remand [Dkt. #9] and Defendant Tacoma Public Utility's Motion to Dismiss [Dkt. #2]. The twenty-three Plaintiffs own property in the flood plain of the Skokomish River, downstream from TPU's Cushman Hydroelectric Project. In September 2016, Plaintiffs sued TPU in Mason County Superior Court, alleging state tort claims for damages resulting from TPU's 2008 FERC-mandated flow regime for the North Fork of the Skokomish River. They claim TPU caused flooding and property damage by improperly releasing water from nearby McTaggert Creek into the North Fork of the

Skokomish River. They also claim TPU failed to adequately "enhance the channel capacity of the River" before releasing FERC-mandated flows. They assert six claims: (1) strict liability water law claims; (2) violation of RCW 4.24.630, which prohibits wrongful causing waste or injury to another's land; (3) trespass and continuing trespass; (4) nuisance and continuing nuisance; (5) negligence; and (6) inverse condemnation.

TPU timely removed the case to federal court. It argues Plaintiffs' negligence claim necessarily raises two federal questions: (1) whether TPU breached the duty of care established by its federal license, and (2) whether § 10(c) of the Federal Power Act preserves all state law damage claims.

Plaintiffs ask the Court to remand the case to Mason County, claiming none of their state law damage claims implicate a federal question. They contend the duty of care arises from state case law, not from TPU's federal license. They claim the case is identical to *Richert v. Tacoma*, which this Court remanded in 2011 after the plaintiffs agreed to dismiss their claim for injunctive relief—precluding TPU from operating the dam in a way that damaged them—which was the "hook" TPU used to remove that case. This Court determined the remaining state law damage claims—including Plaintiffs' negligence claims—did not raise a federal question. *See Richert et al. v. Tacoma Power Utility, et al.*, No. 10-05863, Dkt. #32. Plaintiffs also argue § 10(c) preserves their state law damage claims because it expressly assigns liability to dam operators for damages caused by dam operations.

TPU argues that *Richert* was or at least is wrongly decided, because every court that has since considered this issue found federal jurisdiction over state law negligence claims: The Fifth Circuit held that FERC—not state tort law—set the applicable duty of care. *Simmons v. Sabine River Auth. La.*, 732 F.3d 569, 476 (5th Cir. 2013). *Simmons* also held that § 10(c)'s limited

savings clause did not preserve state law claims challenging FERC-mandated dam operations—it permitted only negligence claims for failing to operate the dam in compliance with the permit. *Id.* The Eleventh Circuit similarly held that federal issues were inherent in the resolution of state law tort claims against a dam operator. *See Otwell v. Ala. Power Co.*, 747 F.3d 1275, 1279 (11th Cir. 2014) ("Appellants' claims are inescapably intertwined with a review of the 2010 License and constitute an impermissible collateral attack on FERC's final order."). And a South Carolina district court denied a motion to remand state law damage claims, holding that a negligence claim necessarily raised a federal issue. *Funderburk v. South Carolina Electric & Gas Company*, 179 F. Supp. 3d 569, 579, 583 (D.S.C. 2016).

TPU moves to dismiss all of Plaintiffs' claims for similar reasons. It argues they are an impermissible collateral attack on TPU's FERC license and are thus preempted by federal law. TPU repeatedly characterizes plaintiffs' claims as an argument that "FERC got it wrong" when it relicensed the dam.

While Plaintiffs failed to intervene in TPU's thirty-six year relicensing process, FERC nonetheless considered and addressed substantially similar complaints by other downstream landowners. It declined to impose any of their proposed requirements, concluding instead that the licensed flow regime would reduce sediment aggradation and decrease the overall likelihood of damages. TPU argues the FPA provides a comprehensive regulatory framework preempting all state law claims except damage claims under § 10(c) resulting from negligent operation *inconsistent* with a FERC license (and proprietary water rights claims reserved under § 27, not at issue here). TPU also contends Plaintiffs' damage claims are conflict preempted because they stand as an obstacle to the purposes and objectives of the FPA's comprehensive regulatory scheme.

1    Plaintiffs deny that their claims are a collateral attack, and that they frustrate the FPA
because they seek merely compensation for damages caused by dam operations—they do not
seek injunctive relief altering the current flow regime. They also reiterate their claim that § 10(c)
preserves state law damage claims for negligent operation, whether or not authorized by a FERC
license.

**I. MOTION TO REMAND**

Plaintiffs argue that because all of their claims, including their negligence claim, depend
solely on state law, this Court lacks subject matter jurisdiction over them. They point primarily
to *Richert*, where this court remanded substantially similar negligence claims. They claim that
the FPA expressly preserves state court jurisdiction over state law damage claims. *See* § 10(c);
*DiLaura v. Power Auth. Of State of N.Y.*, 982 F.2d 73, 78 (2nd Cir. 1999) (Congress "wanted to
reserve the right of injured property owners to bring actions for damages against licensees in
state court under traditional state tort law.").

TPU argues that cases since *Richert* have correctly held that § 10(c) preserves only state
law negligence claims arising from negligent operation of the dam—for failing to adhere to its
license's operational requirements. But that is not what the Plaintiffs claim here; they argue
operation of the dam in compliance with the license nevertheless causes damage. TPU argues
that the duty component of plaintiff's negligence claim necessarily arises from the FERC license,
which unavoidably raises a federal question.

**A. Standard of review**

An action is removable to a federal court only if it could have been brought there
originally. 28 U.S.C. § 1441(a). Under *Conrad Associates v. Hartford Accident & Indemnity Co.*,
994 F. Supp. 1196 (N.D. Cal. 1998) and numerous other authorities, the party asserting federal

jurisdiction has the burden of proof on a motion to remand to state court. The removal statute is strictly construed against removal jurisdiction. The strong presumption against removal jurisdiction means that the defendant always has the burden of establishing removal is proper. *Conrad*, 994 F. Supp. at 1198. It is obligated to do so by a preponderance of the evidence. *Id.* at 1199; *see also Gaus v. Miles*, 980 F.2d 564, 567 (9th Cir. 1992). Federal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance. *Id.* at 566.

**B. Plaintiffs' negligence claim necessarily raises a federal question**

A claim generally arises under federal law only when the "federal question is presented on the face of the plaintiff's properly pleaded complaint." *Valles v. Ivy Hill Corp.*, 410 F.3d 1071, 1075 (9th Cir. 2005). But "federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *Gunn v. Minton*, 133 S. Ct. 1059, 1065 (2013) (citation omitted).

A state law claim "necessarily raises" a federal question when the court must apply federal law to the facts of the plaintiff's case. *Id*. To prevail on a negligence claim under Washington law a plaintiff must establish an applicable duty of care. *See McKown v. Simon Prop. Grp. Inc.*, 689 F.3d 1086, 1091–92 (9th Cir. 2012). *Simmons* held that § 10(c) of the FPA—not state tort law—established the applicable duty of care for dam operators. 732 F.3d at 476; *see also* 16 U.S.C. § 803(c) ("the licensee… shall conform to such rules and regulations as the Commission may from time to time prescribe."). Relying on *Simmons*, *Funderburk* held that a dam operator's FERC license provided the "only currently ascertainable source of a duty of care for [the] Plaintiff's negligence claim." *Funderburk*, 179 F. Supp. 3d at 579. *Otwell* similarly held that state law tort claims are "inescapably intertwined" with a review of a FERC license.

*See* 747 F.3d at 1279 (plaintiff's state law claims were an "impermissible collateral attack" on FERC's relicensing decision).

Plaintiffs' negligence claim necessarily raises a federal question because TPU's FERC license established the applicable duty of care. Plaintiffs' assertion that Washington case law provides the duty of care for their negligence claim is incorrect. If it were correct, state tort law would supplant FERC's exclusive control of dam operations and would subject dam operators to contradictory standards of care in different jurisdictions. This would be especially problematic where FERC-licensed dam operations affect water bodies spanning more than one state, *see Simmons*, 732 F.3d at 476 (the fact that the dam at issue spans the Texas and Louisiana state lines underscores the "importance of a single federal agency controlling public water use and dam operations"), but it is no less true where the dam is located entirely in one state. Plaintiffs' negligence claim also raises a second federal question—whether § 10(c) of the FPA preserves Plaintiffs' state law claims, or whether § 27 bars the claims. Because Plaintiffs' negligence claim necessarily raises a federal question, the first factor is satisfied.

Second, the federal issues in this case are "actually disputed;" the parties dispute whether the duty of care arises from the FPA or from state law. The parties also disagree in their interpretation of § 10(c) as it applies to this case. Plaintiffs argue this section preserves all state law damage claims, while TPU argues it only preserves claims challenging conduct not in compliance with a FERC license. Thus the second factor is also satisfied.

In analyzing whether the federal issue in this case is substantial "it is not enough that the federal issue be significant to the particular parties in the immediate suit" rather the inquiry must focus on "the importance of the issue to the federal system as a whole." *Gunn v. Minton*, 133 S. Ct. 1059, 1066 (2013). The federal government has an "obvious concern in maintaining control

over [the] engineering, economic, and financial soundness" of FERC-licensed dam operations. *First Iowa. Hydro-Elec. Co-op v. Federal Power Commission*, 328 U.S. 152, 172 (1946). The FPA is designed as "a complete scheme of national regulation which would promote the comprehensive development of the water resources of the Nation… instead of a piecemeal, restrictive, negative approach of… other federal laws previously enacted." *Id.* at 180.

Because it is necessary to interpret TPU's FERC license to determine the duty of care, Plaintiffs' claims implicate a substantial issue of federal law. The FPA provides a comprehensive regulatory structure and prescribes an arduous licensing procedure to establish guidelines for dam operations. TPU's thirty-six year FERC relicensing process, involving numerous federal agencies, Northwest Indian Tribes, and other stakeholders, evidences the substantiality of this regime. Plaintiffs' negligence claim necessarily requires analysis of the federal standard borne out of this process. The federal issues in this case are substantial.

The final issue is whether exercising jurisdiction in this case would "herald an enormous shift of traditionally state cases into federal courts." *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 319 (2005). The FPA provides no evidence that Congress intended these issues to be litigated in state courts. Conversely, the fact that the FPA's judicial review provisions both vest the federal courts with "exclusive jurisdiction" evidences Congress' intent to resolve such disputes in a federal forum. *See* 16 U.S.C. §§ 825l(b), 825p. Since the FPA anticipates federal jurisdiction, and cases regarding similar state law claims have likewise been removed to federal court, exercising jurisdiction is unlikely to significantly shift state law claims away from state courts. Exercising jurisdiction in this case will not upset the congressionally-approved state and federal balance under the FPA.

Because Plaintiffs' state law negligence claim necessarily raises a substantial federal question regarding the duty of care established by TPU's FERC license, Plaintiffs Motion to Remand for lack of federal question jurisdiction is DENIED.

**C. Section 10(c) does not preserve Plaintiffs' state law claims**

Plaintiffs alternately claims that § 10(c) preserves state court jurisdiction over its damage claims.

The first part of § 10(c) imposes requirements on dam operators including regular maintenance, efficient operation, and to "conform to such rules and regulations as the Commission may from time to time prescribe for the protection of life, health and property." *See* 16 U.S.C. § 803(c). The second part clarifies that the licensee "shall be liable for all damages occasioned to the property of others by the construction, maintenance, or operation of the project works… constructed under the license, and in no event shall the United States be liable therefor." *Id.*

It is well-established that § 10(c) does not create a private right of action. *See, e.g., Skokomish Indian Tribe v. United States*, 410 F.3d 506, 519; *DiLaura*, 982 F.2d at 78. Yet plaintiffs rely on the Second Circuit's interpretation of § 10(c) in *DiLaura*—that Congress intended to preserve state tort liability for dam operators—for the proposition that the FPA preserves state court jurisdiction. 982 F.2d at 78. Unlike Plaintiffs here, however, the plaintiffs in *DiLaura* alleged the dam operator failed to comply with its FERC license. *Simmons* agreed that § 10(c) permits a negligence claim based on the failure to conform to FERC's guidelines, because such a claim would not conflict with FERC's operational control. *See* 732 F.3d at 477 n.9. Nonetheless, *Simmons* rejected the argument that § 10(c) preserves *all* state law damage claims, reasoning that such a determination would be inconsistent with the Supreme Court's holding that

the FPA grants FERC exclusive jurisdiction. 732 F.3d at 467; *see also California v. FERC*, 495 U.S. 490, 498 (Section 27 protects from federal supersedure only a State's proprietary water rights).

Section 10(c) preserves only existing state law claims not otherwise preempted that specifically challenge the operation of a dam outside the parameters of its FERC license. Plaintiffs do not contend that TPU is operating the dam in violation of its FERC license. Instead, they argue that the FERC-mandated operations in fact caused their damages. Plaintiffs do not cite any case holding or suggesting that § 10(c) preserves such claims. The FPA does not preserve state court jurisdiction over Plaintiffs' claims in this case. Their motion to remand on this basis is DENIED.

## II. MOTION TO DISMISS

TPU moves to dismiss all of Plaintiffs' claims, arguing they are an impermissible collateral attack on TPU's FERC license. Through the FPA, Congress constructed a comprehensive regulatory framework granting FERC exclusive jurisdiction over licensing decisions, and providing an administrative appeals process for challenging such actions. Although Plaintiffs failed to participate in this process, FERC considered and rejected similar claims from other downstream landowners in relicensing the dam. TPU argues Plaintiffs' damage claims are "field preempted" by the FPA, which reserves only state law claims for negligent operation inconsistent with a FERC license, under § 10(c), and proprietary water rights claims, under § 27. TPU also contends Plaintiffs' claims are "conflict preempted" because state tort liability for operations in compliance with TPU's FERC license would obstruct the FPA's comprehensive scheme.

1    Plaintiffs argue that since they merely seek monetary compensation rather than injunctive
2    relief, their claims do not interfere with FERC's regulatory structure. They again argue that §
3    10(c) preserves state law claims for damages caused by the operation of a dam, even if it is
4    operated in compliance with a FERC license.

**A. Standard of review**

Dismissal under Rule 12(b)(6) may be based on either the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *See Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). A plaintiff's complaint must allege facts to state a claim for relief that is plausible on its face. *See Aschcroft v. Iqbal*, 566 U.S. 662, 678 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations and footnotes omitted). This requires a plaintiff to plead "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal*, 566 U.S. at 678 (citing *Twombly*).

**B. Field preemption**

Field preemption—a form of implied preemption—occurs when "the federal role is so pervasive that no room is left for the states to supplement it." *See Sayles Hydro Assocs. v. Maughan*, 985 F.2d 451, 455 (9th Cir. 1993). The Supreme Court held that § 27 grants exclusive jurisdiction to FERC regarding federally-licensed hydroelectric power projects, except for the

limited powers reserved to the states. *First Iowa Hydro-Electric Co-op.*, 328 U.S. at 176. Section 27 of the FPA is an express savings clause, which provides:

> Nothing contained in this chapter shall be construed as affecting or intending to affect or in any way to interfere with the laws of the respective States relating to the control, appropriation, use or distribution of water used in irrigation or for municipal or other uses, or any vested right acquired therein.

16 U.S.C. § 821.

Both the Supreme Court and the Ninth Circuit have interpreted this savings clause narrowly, reserving to the states only water-related property rights. *See Sayles Hydro*, 985 F.2d at 455 ("[T]he only authority states get over federal power projects relates to allocating proprietary rights in water."). Relying on Supreme Court and Ninth Circuit precedent, *Simmons* held that the FPA exempts "only a state property law regime [that] enables users of streams and wells to obtain proprietary rights in a continuing quantity of water." 732 F.3d at 476–77.

The FPA and its associated regulations create a comprehensive regime under which all stakeholders to a hydroelectric project, such as affected landowners, may intervene in the licensing process. *See* 18 C.F.R. 385.214 (permitting intervention). Intervening parties may seek rehearing of a licensing decision under § 825l(a), and parties aggrieved by a FERC order may seek review in the U.S. Courts of Appeals pursuant to § 825l(b). The Supreme Court held that § 825l(b) requires that "all objections to the order, to the license it directs to be issued, and to the legal competence of the licensee to execute its terms, must be made in the Court of Appeals or not at all." *City of Tacoma v. Taxpayers of Tacoma*, 357 U.S. 320, 336 (1958). Plaintiffs did not challenge the terms of TPU's FERC license at any time during the thirty-six year relicensing process. Nonetheless, FERC did expressly consider (and reject) claims by other downstream landowners that it should implement additional flood-control measures before returning flows to the North Fork.

Because Plaintiffs' claims relate only to flood damage, and not to proprietary water rights, their claims are not preserved by § 27's savings clause—rather, they are preempted by the FPA because they are not among the reserved claims. And as discussed above, they are not preserved by § 10(c). Furthermore, Plaintiffs failed to follow the proper administrative procedures for challenging FERC's relicensing determination. While FERC did consider identical criticisms of downstream landowners in the proper forum, Plaintiffs now seek to challenge its licensing determination in state court. Plaintiffs launch an impermissible collateral attack by improperly seeking state tort damages for TPU's operations in compliance with its FERC license. Because the FPA occupies the relevant field of law and prescribes an administrative appeals process, and because their claims are not preserved either by § 10(c) or by § 27, Plaintiffs claims are field preempted by the FPA.

**C. Conflict preemption**

TPU asserts that Plaintiffs' damage claims are also preempted under "conflict preemption," which occurs "when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Lockyer v. Dynergy, Inc.*, 375 F.3d 831, 849 (9th Cir. 2004) (quoting *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984)). "When federal law forbids an action that state law requires, the state law is 'without effect.'" *Mut. Pharm. Co., Inc. v. Bartlett*, 133 S. Ct. 2466, 2476–77 (2013) (citation omitted).

*Simmons* affirmed the district court's holding that a plaintiff landowners' damage claims against a dam operator were preempted by the FPA. 732 F.3d at 476. The court reasoned that "damage claims can serve the same effect as regulations." *See id.* at 476–77. The Supreme Court has similarly acknowledged that "state regulation can be… effectively exerted through an award

of damages, and the obligation to pay compensation can be, indeed is designed to be, a potent method of governing conduct and controlling policy." *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 637 (2012).

Awarding damages under state law for actions otherwise consistent with federal law will necessarily frustrate the purposes and objectives of the FPA's comprehensive regulatory scheme. FERC cannot effectively control TPU's dam operations if the conduct it prescribes in its license will subject the operator to state law tort liability, even after it has addressed the impacts to downstream landowners in the proper forum. If FERC is to maintain exclusive regulatory control over dam operations, dam operators must not be subject to state tort liability, except for conduct not in compliance with a FERC license or otherwise relating to proprietary water rights. Because Plaintiffs' damage claims necessarily obstruct the FPA's regulatory scheme, the claims are conflict preempted.

All of Plaintiffs' state law damage claims are both conflict preempted and field preempted by the FPA. TPU's Motion to Dismiss is GRANTED.

### III. LEAVE TO AMEND

On a 12(b)(6) motion, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Cook, Perkiss & Liehe v. N. Cal. Collection Serv.*, 911 F.2d 242, 247 (9th Cir. 1990). However, where the facts are not in dispute, and the sole issue is whether there is liability as a matter of substantive law, a court may deny leave to amend. *See Albrecht v. Lund*, 845 F.2d 193, 195–96 (9th Cir. 1988).

Plaintiffs seek leave to amend to omit their negligence claim (if and to the extent the Court concludes it raises a federal question), in an effort to obtain remand. But because all of

their state law damage claims conflict with and are therefore pre-empted by the FPA, that effort would not change the outcome.

## IV. CONCLUSION

Plaintiffs' Motion to Remand is DENIED. Tacoma Power Utility's Motion to Dismiss Plaintiffs' claims based on federal preemption is GRANTED, and their claims are DISMISSED, with prejudice and without leave to amend.

IT IS SO ORDERED.

Dated this 21st day of April, 2017.

Ronald B. Leighton
United States District Judge